**134 Nev., Advance Opinion 53**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MICHAEL DAMON RIPPO,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 53626<br><br>**FILED**<br><br>AUG 02 2018<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from the denial of a postconviction petition for a writ of habeas corpus in a death penalty case. Eighth Judicial District Court, Clark County; David Wall, Judge.

*Affirmed in part, reversed in part, and remanded.*

Rene L. Valladares, Federal Public Defender, and David Anthony and Michael Pescetta, Assistant Public Defenders, Las Vegas, for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven S. Owens, Chief Deputy District Attorney, Clark County, for Respondent.[1]

---

[1]After this appeal was briefed, argued, and submitted for decision, attorney Steven Wolfson was appointed Clark County District Attorney. Mr. Wolfson was one of the attorneys who represented appellant Michael Damon Rippo at trial. He has not appeared as the district attorney in this appeal.

BEFORE THE COURT EN BANC.[2]

*OPINION*

By the Court, HARDESTY, J.:

This matter is before us on remand from the United States Supreme Court. Our prior opinion in this case, *Rippo v. State (Rippo III)*, 132 Nev. 95, 368 P.3d 729 (2016), affirmed a district court order denying appellant Michael Damon Rippo's second postconviction petition for a writ of habeas corpus, which challenged his conviction for two first-degree murders and related felony offenses and his death sentences. The petition was both untimely and successive. Our opinion focused primarily on Rippo's argument that he had shown good cause and prejudice to excuse the procedural bars to his petition based on the alleged ineffective assistance of his first postconviction counsel. We reiterated the holdings from this court's decisions in *Crump v. Warden*, 113 Nev. 293, 934 P.2d 247 (1997), and *McKague v. Warden*, 112 Nev. 159, 912 P.2d 255 (1996), that where a petitioner is entitled to the appointment of postconviction counsel pursuant to a statutory mandate, the ineffective assistance of that counsel may provide good cause for filing a second petition but that the ineffective-assistance claim must not itself be procedurally barred, *see Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). We then

---

[2]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.

addressed two issues related to whether an ineffective-assistance-of-postconviction-counsel claim, asserted as good cause to excuse other defaulted claims, has been raised in a timely fashion: (1) when does a postconviction-counsel claim reasonably become available, and (2) what is a reasonable time thereafter in which the claim must be asserted. As to the first question, we held that the factual basis for a claim of ineffective assistance of postconviction counsel is not reasonably available until the conclusion of the postconviction proceedings in which the ineffective assistance allegedly occurred. As to the second question, we held that a petition asserting ineffective assistance of postconviction counsel to excuse the procedural default of other claims has been filed within a reasonable time after the postconviction-counsel claim became available so long as it is filed within one year after entry of the district court's order disposing of the prior petition or, if a timely appeal was taken from the district court's order, within one year after this court issues its remittitur. Our prior opinion also took the opportunity to explain the test for evaluating claims of ineffective assistance of postconviction counsel, adopting the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Applying those holdings, we concluded that although Rippo filed his petition within a reasonable time after the postconviction-counsel claims became available, those claims lacked merit and therefore he had not demonstrated good cause for an untimely petition or good cause and prejudice for a second petition. We also rejected his other allegations of good cause and prejudice. Accordingly, we determined that the district court properly denied the petition as procedurally barred and therefore affirmed.

 

Rippo petitioned the United States Supreme Court for certiorari. The Supreme Court granted certiorari, vacated our prior opinion, and remanded for further proceedings. *Rippo v. Baker (Rippo IV)*, 580 U.S. ___, 137 S. Ct. 905 (2017). The Supreme Court's decision touched on only one of the many issues discussed in our prior opinion: Rippo's judicial bias claim. As to that issue, the Supreme Court determined that we applied the wrong legal standard by focusing on whether Rippo's allegations demonstrated actual bias rather than asking "whether, considering all the circumstances alleged, the risk of bias was too high to be constitutionally tolerable." *Id.* at ___, 137 S. Ct. at 906-07. The Court then vacated our prior judgment and remanded "for further proceedings not inconsistent with this opinion." *Id.*

Upon reconsideration of the judicial-bias claim, we conclude that an evidentiary hearing is required. Rippo has offered some evidence in support of the judicial-bias claim that is substantially different than what was available to his trial and appellate counsel and this court on direct appeal, such that the law-of-the-case doctrine may not bar further litigation of this claim. And, considering the inquiry required by the Supreme Court, the judicial-bias claim may have merit if the new allegations are true. Rippo also made sufficient allegations that prior postconviction counsel provided ineffective assistance by not investigating and reasserting the judicial-bias claim, which would if true provide good cause to excuse the procedural defaults relevant to the judicial-bias claim. We therefore conclude that an evidentiary hearing is required with respect to these issues related to the judicial-bias claim. Accordingly, we reverse the district court's order as to the first claim in the postconviction petition

and remand for an evidentiary hearing consistent with this opinion. Because the Supreme Court's decision did not affect the other holdings in our prior opinion, we reproduce most of our prior opinion and once again affirm the remainder of the district court's order.

## FACTS AND PROCEDURAL HISTORY

The bodies of Denise Lizzi and Lauri Jacobson were found in Jacobson's apartment on February 20, 1992. Rippo and his girlfriend, Diana Hunt, were charged in the robbery and murder of Lizzi and Jacobson.[3] Hunt agreed to plead guilty to robbery and testify against Rippo. According to Hunt's testimony, Rippo hatched a plan to rob Lizzi that included Hunt subduing Jacobson by hitting her with a beer bottle. In carrying out the plan, Rippo used a stun gun to subdue both women, bound and gagged them, and strangled them;[4] wiped down the apartment with a rag and removed Lizzi's boots and pants because he had bled on her pants; and took Lizzi's car and credit cards, later using the credit cards to make several purchases. Approximately one week later, Rippo confronted Hunt, who suggested that they turn themselves in to the police. Rippo refused, telling Hunt that he had returned to Jacobson's apartment, cut the women's throats, and jumped up and down on them. Other witnesses

---

[3]The facts are set forth in greater detail in our opinion on direct appeal from the judgment of conviction. *Rippo v. State (Rippo I)*, 113 Nev. 1239, 1244-47, 946 P.2d 1017, 1021-23 (1997).

[4]Hunt testified that when she accused Rippo of choking the women, he told her that he had temporarily cut off their air supply and that he and Hunt needed to leave before the women regained consciousness.

provided testimony linking Rippo to property taken from the women. And several witnesses testified to incriminating statements made by Rippo. The medical examiner testified that Lizzi's injuries were consistent with manual and ligature strangulation and that Jacobson died from asphyxiation due to manual strangulation. But the medical examiner also testified that neither body revealed stun gun marks. A jury found Rippo guilty of two counts of first-degree murder and one count each of robbery and unauthorized use of a credit card.

At the penalty hearing, the State alleged six aggravating circumstances: that the murders were committed (1) by a person who was under a sentence of imprisonment; (2) by a person who was previously convicted of a felony involving the use or threat of violence to the person of another; (3) during the commission of a burglary; (4) during the commission of a kidnapping; (5) during the commission of a robbery; and (6) that the murders involved torture, depravity of mind, or the mutilation of the victims. In support of the first two aggravating circumstances, the State presented evidence that Rippo had a prior conviction for sexual assault and was on parole at the time of the murders. The remaining aggravating circumstances were supported by the guilt-phase evidence. In addition to the evidence supporting the aggravating circumstances, the State presented evidence that Rippo had a prior conviction for burglary and had confessed to committing numerous burglaries. The State also presented evidence about Rippo's conduct while in prison, that on one occasion he had been found with weapons in his cell, and on another occasion he threatened to kill a female prison guard. Finally, the State

called five members of Jacobson's and Lizzi's families who provided victim-impact testimony.

The defense presented three witnesses in mitigation: (1) a prison worker testified that Rippo had not presented any problems while incarcerated; (2) Rippo's stepfather, Robert Duncan, testified regarding Rippo's friendly behavior when living with him while on parole and asked the jury to spare Rippo's life; and (3) Rippo's sister testified that their former stepfather, James Anzini, emotionally abused Rippo and had stolen his paychecks and gambled them away, and she urged the jury to show mercy. The defense also presented a letter from Rippo's mother, who was unable to testify in person because of medical issues. She described Rippo's upbringing and personality as a child (inquisitive, tender, and loving). She explained that Anzini made his living by gambling and that as a result, the family environment was not stable. She further described Rippo's relationship with Anzini in his teen years; the circumstances leading to Rippo's juvenile adjudication and commitment; the impact on the family environment and Rippo when Anzini was diagnosed with terminal cancer, eventually leading up to the sexual assault committed by Rippo in 1981; and Rippo's efforts to improve himself while incarcerated. At the conclusion of the penalty hearing, Rippo made a statement in allocution.

The jury found all six aggravating circumstances, concluded that the mitigating circumstances did not outweigh the aggravating circumstances, and imposed a sentence of death for each murder. This court affirmed the convictions and sentences on direct appeal. *Rippo I*,

113 Nev. at 1265, 946 P.2d at 1033. The remittitur issued on November 3, 1998.

Rippo filed a timely postconviction petition for a writ of habeas corpus in the district court on December 4, 1998, which was supplemented twice (on August 8, 2002, and February 10, 2004). As required by NRS 34.820, Rippo was represented by court-appointed counsel in the postconviction proceeding. Following an evidentiary hearing, the district court denied the petition. *See Rippo v. State (Rippo II)*, 122 Nev. 1086, 1091, 146 P.3d 279, 282 (2006). On appeal, this court struck three of the six aggravating circumstances pursuant to *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004)—the circumstances alleging that the murders occurred during the commission of a burglary, a kidnapping, and a robbery—but affirmed the denial of Rippo's petition after concluding in a 4-3 decision that the jury's consideration of the invalid aggravating circumstances was harmless beyond a reasonable doubt. *Rippo II*, 122 Nev. at 1094, 1098, 146 P.3d at 284, 287. The remittitur issued on January 16, 2007.

Rippo filed a second postconviction petition for a writ of habeas corpus on January 15, 2008, with the assistance of the Federal Public Defender's Office. The 193-page petition asserted 22 grounds for relief, some of which had been raised in prior proceedings and others that were new.[5] The State moved to dismiss the petition as procedurally

---

[5]The petition was accompanied by approximately 17 volumes of exhibits.

SUPREME COURT
OF
NEVADA

(O) 1947A

8

barred, and Rippo sought leave to conduct discovery. After hearing argument on the petition and motions, the district court granted the State's motion to dismiss and denied Rippo's motion for discovery as moot. This appeal followed.

## DISCUSSION

The petition at issue raised claims for relief based on trial error, prosecutorial misconduct and failure to disclose evidence, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and ineffective assistance of postconviction counsel. Rippo acknowledged that the petition was not filed within the time period provided by NRS 34.726(1) and that most of the grounds in the petition were either waived, successive, or an abuse of the writ and therefore subject to various procedural defaults under NRS 34.810. He provided several explanations for his failure to file the petition within the time provided by NRS 34.726(1) and for failing to raise the new claims in prior proceedings or raising the claims again. The district court dismissed the petition as procedurally defaulted, specifically mentioning NRS 34.726 and NRS 34.810(2). In reviewing the district court's application of the procedural default rules, we will give deference to its factual findings but "will review the court's application of the law to those facts de novo." *State v. Huebler*, 128 Nev. 192, 197, 275 P.3d 91, 95 (2012).

*Ineffective assistance of postconviction counsel as cause and prejudice to excuse a procedural default*

This opinion focuses on Rippo's allegations that counsel appointed to represent him in his first postconviction proceeding provided ineffective assistance (postconviction-counsel claim). We have recognized

Supreme Court
OF
Nevaoa

(O) 1947A

a right to effective assistance of postconviction counsel only where the appointment of postconviction counsel is statutorily mandated. *See Crump v. Warden*, 113 Nev. 293, 303 & n.5, 934 P.2d 247, 253 & n.5 (1997); *McKague v. Warden*, 112 Nev. 159, 165 n.5, 912 P.2d 255, 258 n.5 (1996). Under Nevada law, the appointment of postconviction counsel is statutorily mandated in one circumstance: where the "petitioner has been sentenced to death and the petition is the first one challenging the validity of the petitioner's conviction or sentence." NRS 34.820(1)(a). That is the case here—Rippo has been sentenced to death and his prior petition was the first one challenging the validity of his conviction and sentence. Rippo therefore was entitled to effective assistance of that counsel.

Rippo's allegations regarding postconviction counsel arise in two contexts. First, Rippo asserted a postconviction-counsel claim as a free-standing claim for relief from his judgment of conviction and sentence (claim 20(A), (B)).[6] Second, Rippo asserted that postconviction counsel's ineffective assistance established "cause and prejudice" to excuse the

---

[6]The free-standing claim raises another issue that has not been adequately addressed by the parties and therefore is not addressed in this opinion: whether a free-standing claim of ineffective assistance of postconviction counsel is cognizable in a postconviction petition for a writ of habeas corpus given that there is no constitutional right to postconviction counsel. *See* NRS 34.724(1) ("Any person convicted of a crime and under sentence of death or imprisonment who *claims that the conviction was obtained, or that the sentence was imposed, in violation of the Constitution of the United States or the Constitution or laws of this State . . .* may . . . file a postconviction petition for a writ of habeas corpus to obtain relief from the conviction or sentence . . . ." (emphasis added)).

procedural default of the other claims in his petition. In both contexts, we must address the allegations about postconviction counsel's performance within the prism of the three procedural bars that are implicated by the petition and the district court's decision: the second-or-successive-petition bar set forth in NRS 34.810(2), the waiver bar set forth in NRS 34.810(1)(b), and the time bar set forth in NRS 34.726(1).[7]

*Successive petitions and abuse of the writ*

We start with the statutory provision that limits second or successive habeas petitions that challenge a judgment of conviction or sentence. Under NRS 34.810(2), such a petition must be dismissed in either of two circumstances: (1) if "it fails to allege new or different grounds for relief and . . . the prior determination was on the merits" or (2) "if new and different grounds are alleged" and the court finds that the petitioner's failure "to assert those grounds in a prior petition constituted an abuse of the writ." To avoid dismissal under this provision, the petitioner must plead and prove specific facts that demonstrate both "[g]ood cause for the petitioner's failure to present the claim or for

---

[7]Rippo's petition was subject to a fourth procedural bar, laches under NRS 34.800, because it was filed more than five years after our decision on direct appeal from the judgment of conviction. *See* NRS 34.800(2). Although the State pleaded laches below as required by NRS 34.800(2), we decline to address it because the district court did not mention laches in its order and the State has not asserted it as an alternative basis on which to affirm the district court's decision aside from a summary statement on the final page of its brief that claim 21 is "subject to laches."

SUPREME COURT
OF
NEVADA

(O) 1947A

presenting the claim again" and "[a]ctual prejudice to the petitioner." NRS 34.810(3). Here, the prior petition was resolved on the merits and all of the grounds in the second petition had been raised in the prior petition or were new and different grounds for relief. The second petition therefore was subject to dismissal under NRS 34.810(2) absent a showing of cause and prejudice under NRS 34.810(3).

*Failure to raise claims in prior proceedings*

A petition also may be subject to dismissal under NRS 34.810(1)(b) if it raises any grounds that could have been raised in a prior proceeding (whether at trial, on appeal, or in a prior postconviction proceeding). Like the procedural default for second and successive petitions under NRS 34.810(2), this procedural default may be excused by a showing of "cause for the failure to present the grounds and actual prejudice," NRS 34.810(1)(b), and the petitioner has "the burden of pleading and proving specific facts that demonstrate" cause and actual prejudice, NRS 34.810(3). Most of the grounds raised in Rippo's petition could have been raised in a prior proceeding, including those based on alleged errors that occurred at trial (claims 1, 2, 6-14), which could have been raised on direct appeal; ineffective assistance of trial and appellate counsel (claims 3-8, 10-12, 14, 16-19), which could have been raised in the prior postconviction habeas petition; errors on appellate review (claim 15), which could have been raised in a petition for rehearing; and errors or irregularities in the prior postconviction proceeding (claim 20(C)-(G)),



which could have been raised in the prior postconviction appeal. Those grounds therefore are subject to dismissal under NRS 34.810(1)(b).[8]

*Procedural default of cause-and-prejudice claim*

To demonstrate the cause required to excuse the procedural default of claims under NRS 34.810(1)(b) and (2), the petitioner must show that "an impediment external to the defense" prevented the petitioner from presenting the claims previously or warrants presenting them again. *Clem v. State*, 119 Nev. 615, 621, 81 P.3d 521, 525 (2003). In an effort to make the required showing, Rippo relies primarily on allegations that his first postconviction counsel provided ineffective assistance.

This court has addressed ineffective assistance of postconviction counsel as cause to excuse a procedural default under NRS 34.810(1)(b) in *Crump*. In that case, we held that where a petitioner has the statutory right to assistance of postconviction counsel, a meritorious claim that postconviction counsel provided ineffective assistance may establish cause under NRS 34.810(1)(b) for the failure to present claims for relief in a prior postconviction petition for a writ of habeas corpus.[9]

---

[8]The free-standing postconviction-counsel claim (claim 20(A), (B)) could not have been raised in a prior proceeding; that ground therefore is not subject to NRS 34.810(1)(b) to the extent that it is cognizable, *see supra* n.6. *See Riker*, 121 Nev. at 235, 112 P.3d at 1077.

[9]We have held that good cause cannot be shown based on a postconviction-counsel claim where there is no constitutional or statutory right to counsel. *McKague*, 112 Nev. at 164-65, 912 P.2d at 258; *see also Brown v. McDaniel*, 130 Nev. 565, 567, 331 P.3d 867, 869 (2014) (holding that decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), does not address

*continued on next page . . .*

Supreme Court
OF
Nevada

(O) 1947A

113 Nev. 293, 304-05, 934 P.2d 247, 254 (1997). But we have also recognized that an ineffective-assistance-of-counsel claim cannot be asserted as cause to excuse the procedural default of another claim for relief if the ineffective-assistance claim is itself defaulted. *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003); *accord Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000) (holding that ineffective-assistance claim asserted in federal habeas petition as cause for procedural default of another claim may itself be subject to procedural default that can be excused only by satisfying cause-and-prejudice standard with respect to ineffective-assistance claim). That is the case here: Rippo's ineffective-assistance-of-postconviction-counsel claim is itself subject to procedural default under NRS 34.726(1).[10] *Riker*, 121 Nev. at 235, 112 P.3d at 1077; *see also Pellegrini*, 117 Nev. at 869-70, 34 P.3d at 526 (rejecting argument that NRS 34.726 does not apply to second or successive petitions).

---

*. . . continued*
state procedural default rules and refusing to recognize ineffective assistance of postconviction counsel as good cause where petitioner did not have statutory or constitutional right to postconviction counsel).

[10]This procedural default was not addressed in *Crump* because Crump filed his petition in 1989, before NRS 34.726 had been adopted. *See* 1991 Nev. Stat., ch. 44, § 5, at 75-76 (adopting NRS 34.726); *id.* § 33, at 92 (providing that amendments did not apply to postconviction proceedings commenced before January 1, 1993).

*Availability of postconviction-counsel claim and time within which it must be raised*

Under NRS 34.726(1), a habeas petition challenging a judgment of conviction or sentence must be filed within one year after entry of the judgment of conviction, or if a timely appeal is taken from the judgment of conviction, within one year after this court issues its remittitur on direct appeal from the judgment of conviction. *Dickerson v. State*, 114 Nev. 1084, 1087-88, 967 P.2d 1132, 1133-34 (1998) (construing NRS 34.726(1) to allow one year from remittitur on direct appeal only if direct appeal was timely). Rippo's petition was not filed within that time period. To excuse the delay in filing the petition, Rippo had to demonstrate good cause for the delay. NRS 34.726(1). A showing of good cause for the delay has two components: (1) that the delay was not the petitioner's fault and (2) that "dismissal of the petition as untimely will unduly prejudice the petitioner." *Id.*

The first component of the cause standard under NRS 34.726(1) requires a showing that "an impediment external to the defense" prevented the petitioner from filing the petition within the time constraints provided by the statute. *Clem*, 119 Nev. at 621, 81 P.3d at 525; *Hathaway*, 119 Nev. at 252, 71 P.3d at 506. "A qualifying impediment might be shown where the factual or legal basis for a claim was not reasonably available at the time of any default." *Clem*, 119 Nev. at 621, 81 P.3d at 525; *see also Hathaway*, 119 Nev. at 252, 71 P.3d at 506. Rippo argues that there was such an impediment. Specifically, he asserts that the delay in filing the petition was due to ineffective assistance of postconviction counsel and that his postconviction-counsel claim was not

 

available at the time of the procedural default under NRS 34.726(1). We agree.

The availability of a postconviction-counsel claim is related to the showing that a petitioner must make to prove the claim. To make out a claim that postconviction counsel provided ineffective assistance, a petitioner must demonstrate that counsel's performance was deficient and that the deficient performance resulted in prejudice. *See* discussion *infra* pp. 21-25. Although a petitioner knows during the course of the postconviction proceedings that postconviction counsel omitted claims or presented claims in a certain way, he cannot state a claim of ineffective assistance of postconviction counsel until he has suffered prejudice. The basis for the claim thus depends on the conclusion of the postconviction proceedings in which the ineffective assistance allegedly occurred. *Paz v. State*, 852 P.2d 1355, 1358 (Idaho 1993) (Bistline, J., dissenting); *cf. K.J.B., Inc. v. Drakulich*, 107 Nev. 367, 369-70, 811 P.2d 1305, 1306 (1991) (explaining that statute of limitations for attorney malpractice action does not begin to run until claimant sustains damages and "that damages for attorney malpractice are premature and speculative until the conclusion of the underlying lawsuit in which the professional negligence allegedly occurred"). In this case, as with most capital cases, the postconviction proceedings did not conclude within the time period provided in NRS 34.726(1). Therefore, the claim that postconviction counsel provided ineffective assistance in litigating the prior petition was not reasonably available to Rippo at the time of the procedural default under NRS 34.726(1).

The fact that the claim was not reasonably available within the one-year period does not end the inquiry because a petitioner does not have an indefinite period of time to raise a postconviction-counsel claim. As we have recognized, "[t]he necessity for a workable [criminal justice] system dictates that there must exist a time when a criminal conviction is final." *Groesbeck v. Warden*, 100 Nev. 259, 261, 679 P.2d 1268, 1269 (1984) (explaining consideration behind decision to restrict postconviction petition for writ of habeas corpus before enactment of specific statutory time limitations on such petitions). Consistent with that need for finality, we have held that when a petition raises a claim that was not available at the time of a procedural default under NRS 34.726(1), it must be filed within "a reasonable time" after the basis for the claim becomes available. *Hathaway*, 119 Nev. at 254-55, 71 P.3d at 507-08 (discussing delay in filing petition alleging appeal-deprivation claim where petitioner believed that attorney had filed appeal and did not learn of attorney's failure to file appeal before procedural default under NRS 34.726(1)). To determine whether Rippo's petition was filed within a reasonable time, we must answer two questions: (1) when does a claim that postconviction counsel provided ineffective assistance become available, and (2) what is a reasonable time thereafter for filing a petition that raises the claim.

The answer to the first question is related to the basis for a postconviction-counsel claim. We reasoned above that a necessary basis for a claim of ineffective assistance of postconviction counsel depends on the conclusion of the postconviction proceedings in which the ineffective assistance allegedly occurred. Consistent with that determination, we conclude that the postconviction-counsel claim becomes available at the

SUPREME COURT
OF
NEVADA

(O) 1947A

17

conclusion of those proceedings. Although there is no mandatory appeal in the postconviction context and it is not clear that there is a statutory right to counsel to pursue an appeal from an order denying a postconviction habeas petition even when there was such a right to counsel in the district court,[11] we conclude that as a practical matter, if a timely appeal is taken, the postconviction proceeding concludes when this court issues its remittitur on appeal. Otherwise, there is the potential for piecemeal litigation that would further clog the criminal justice system. If no timely appeal is filed, the postconviction proceeding concludes when the district court enters its judgment resolving the petition. In this case, the prior postconviction proceeding concluded when this court issued its remittitur in the postconviction appeal on January 16, 2007. Rippo's postconviction-counsel claim therefore became available on that date.

The next question is whether Rippo's petition was filed within a reasonable time after the postconviction-counsel claim became available. Rippo asserts that a reasonable time for filing a petition that raises a

---

[11]The Supreme Court has indicated that there is no constitutional right to assistance of counsel on appeal from an "initial-review collateral proceeding." *Coleman v. Thompson*, 501 U.S. 722, 755 (1991); *see also Martinez v. Ryan*, 566 U.S. 1, 16 (2012) ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."). And NRS 34.820(1)(a) does not clearly indicate whether the mandatory appointment of counsel pursuant to that statute carries over to an appeal.

SUPREME COURT
OF
NEVADA

(O) 1947A

postconviction-counsel claim would be within one year after the claim becomes available, similar to the time limit set forth in NRS 34.726(1). The State, on the other hand, suggests that a delay of even less than one year may be unreasonable depending on the circumstances, thus proposing more of a claim-by-claim approach. Both positions hold some appeal. Rippo's position provides a bright-line rule while providing sufficient time to investigate additional claims that may not appear from the record. The State's position acknowledges that most omitted claims will appear in the record and that a year is not required for all claims that may have been unavailable at the time of a default under NRS 34.726(1). We are reluctant, however, to take the State's approach because it would only add to the already endless litigation over the application of the procedural default rules, rules that are supposed to discourage the perpetual filing of habeas petitions, *see Pellegrini*, 117 Nev. at 875, 34 P.3d at 529. One needs only look to the California experience in applying its requirement that a habeas petition be filed without "substantial delay" to understand our reticence to use an imprecise standard in this arena. *See generally In re Gallego*, 959 P.2d 290 (Cal. 1998); *In re Robbins*, 959 P.2d 311 (Cal. 1998); *In re Clark*, 855 P.2d 729 (Cal. 1993); *see also Carey v. Saffold*, 536 U.S. 214, 223 (2002) (discussing California's timeliness standard in context of applying federal tolling provision and observing that "[t]he fact that California's timeliness standard is general rather than precise may make it more difficult for federal courts to determine just when a review application . . . comes too late").

To provide clearer boundaries, we look to NRS 34.726 for guidance. With NRS 34.726(1), the Legislature has determined that one

year provides sufficient time within which to raise claims that trial and appellate counsel provided ineffective assistance. The same can be said with respect to raising a postconviction-counsel claim. Using a similar one-year boundary for what is a reasonable time within which to file a petition raising a postconviction-counsel claim that was not factually or legally available at the time of a procedural default under NRS 34.726 also provides some fairness and predictability. *Cf. Pellegrini*, 117 Nev. at 874-75, 34 P.3d at 529 (concluding that for purposes of determining timeliness of successive petitions filed by petitioners whose convictions were final before effective date of NRS 34.726, "it is both reasonable and fair to allow petitioners one year from the effective date of the amendment to file any successive habeas petitions"). We therefore conclude that a claim of ineffective assistance of postconviction counsel has been raised within a reasonable time after it became available so long as the postconviction petition is filed within one year after entry of the district court's order disposing of the prior postconviction petition or, if a timely appeal was taken from the district court's order, within one year after this court issues its remittitur. Because Rippo filed his petition within one year after we issued our remittitur on appeal from the order denying the prior petition, the second petition was filed within a reasonable time after the postconviction-counsel claim became available. Rippo thus met the first component of the good-cause showing required under NRS 34.726(1).

 

*Undue prejudice to excuse untimely petition based on ineffective assistance of postconviction counsel and standard for evaluating postconviction counsel's effectiveness*

The second component of the good-cause showing under NRS 34.726(1) requires the petitioner to demonstrate "[t]hat dismissal of the petition as untimely will unduly prejudice [him]." A showing of undue prejudice necessarily implicates the merits of the postconviction-counsel claim, otherwise this requirement would add nothing to the first component of the good-cause showing required under NRS 34.726(1) and the petitioner would be able to overcome the procedural default under that statute without establishing the merits of the postconviction-counsel claim.

To determine whether the postconviction-counsel claim has any merit, we must address the standard for evaluating postconviction counsel's performance. We have held that the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to evaluate the effectiveness of trial counsel, *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984), and appellate counsel, *Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1113 (1996). Similarly, we have indicated that *Strickland* should be used to evaluate the effectiveness of postconviction counsel where there is a statutory right to that counsel. *Crump v. Warden*, 113 Nev. 293, 304, 934 P.2d 247, 254 (1997) ("[W]e must remand this matter to the district court for an evidentiary hearing to determine whether [first postconviction counsel's] omissions constitute ineffective assistance of counsel as set forth in Strickland."). But unlike the rights to effective assistance of trial and appellate counsel, which are guaranteed by




the Sixth and Fourteenth Amendments to the United States Constitution, *Evitts v. Lucey*, 469 U.S. 387, 392, 396-97 (1985), there is no recognized constitutional right to effective assistance of postconviction counsel,[12] *McKague v. Warden*, 112 Nev. 159, 163, 912 P.2d 255, 257-58 (1996) (concluding that neither the United States nor Nevada Constitution provides for a right to counsel in postconviction proceedings). Given that distinction, we are not obligated to apply *Strickland* to evaluate postconviction counsel's effectiveness. *See People v. Perkins*, 856 N.E.2d 1178, 1183 (Ill. App. Ct. 2006) (observing that with statutory right to postconviction counsel, "*Strickland* is not automatically applicable to claims of less-than-reasonable assistance of postconviction counsel"). However, because *Strickland* provides a well-established standard that has been developed through caselaw and can be easily applied in the postconviction-counsel context, *see Means v. State*, 120 Nev. 1001, 1011, 103 P.3d 25, 32 (2004) (describing *Strickland* as "a fair, workable and, as it turns out, durable standard"), we take this opportunity to explicitly adopt the *Strickland* standard to evaluate postconviction counsel's

---

[12]In the absence of a Supreme Court decision recognizing a constitutional right, we reiterate that the limited right to effective assistance of postconviction counsel addressed in this opinion arises out of the statutory mandate to appoint counsel under NRS 34.820(1)(a), and we disavow any prior decisions suggesting that the right has a constitutional basis, *see, e.g., Pellegrini*, 117 Nev. at 887-88 n.125, 34 P.3d at 537 n.125 (describing *McKague* as "holding that there is no constitutional right to effective assistance of counsel except where state law entitles one to the appointment of counsel"); *Crump*, 113 Nev. at 304-05, 934 P.2d at 254.

SUPREME COURT
OF
NEVADA

(O) 1947A

performance where there is a statutory right to effective assistance of that counsel.[13]

*Strickland* has two prongs. The petitioner must demonstrate (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Both showings must be made before counsel can be deemed to have provided ineffective assistance, *id.* at 687, but a court need not address the prongs in a particular order or even consider both prongs if the petitioner makes an insufficient showing on one, *id.* at 697; *see also McNelton v. State*, 115 Nev. 396, 403, 990 P.2d 1263, 1268 (1999). And when a petitioner presents a claim of ineffective assistance of postconviction counsel on the basis that postconviction counsel failed to prove the ineffectiveness of his trial or appellate attorney, the petitioner must prove the ineffectiveness of both attorneys. *State v. Jim*, 747 N.W.2d 410, 418 (Neb. 2008) (stating that layered claim of ineffective assistance requires evaluation at each level of counsel); *see also Clabourne v. Ryan*, 745 F.3d

---

[13]Not all states guarantee postconviction petitioners a statutory right to the effective assistance of counsel, but in states that do, use of the *Strickland* standard is not uncommon. *See, e.g., In re Clark*, 855 P.2d 729, 748-49 (Cal. 1993); *Silva v. People*, 156 P.3d 1164, 1168-69 (Colo. 2007); *Stovall v. State*, 800 A.2d 31, 38 (Md. Ct. Spec. App. 2002); *Johnson v. State*, 681 N.W.2d 769, 776-77 (N.D. 2004); *Commonwealth v. Priovolos*, 715 A.2d 420, 422 (Pa. 1998). The Supreme Court has also indicated that *Strickland* applies when a state prisoner seeks federal habeas relief and asserts the ineffective assistance of state habeas counsel as cause to excuse the procedural default of a trial-counsel claim. *Martinez*, 566 U.S. at 14.

 

362, 377 (9th Cir. 2014) (observing that prejudice showing required for ineffective assistance of postconviction counsel based on failure to raise ineffective-assistance-of-trial-counsel claim "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective"), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015).

The showing required to satisfy the prejudice prong—a reasonable probability that the result of the proceeding would have been different—varies depending on the context, including the proceeding in which the allegedly deficient performance occurred and the nature of the deficient performance.[14] *See Weaver v. Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1911 (2017) ("[T]he concept of prejudice [under *Strickland*] is defined in different ways depending on the context in which it appears."). In the context of postconviction counsel, we conclude that the prejudice prong requires a showing that counsel's deficient performance prevented the petitioner from establishing "that the

___

[14]For examples of how the prejudice inquiry varies, see *Missouri v. Frye*, 566 U.S. 134, 147-48 (2012) (prejudice arising from deficient performance based on failure to communicate plea offer to defendant), *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012) (prejudice arising from deficient performance in advising defendant to reject favorable plea offer), *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (prejudice arising from deficient performance that led defendant to accept plea offer rather than proceed to trial), *Strickland*, 466 U.S. at 694 (prejudice arising from deficient performance of counsel during trial), and *Kirksey*, 112 Nev. at 998, 923 P.2d at 1114 (prejudice arising from deficient performance on appeal from judgment of conviction).

conviction was obtained, or that the sentence was imposed, in violation of the Constitution of the United States or the Constitution or laws of this State," NRS 34.724(1). As one state court has explained, the question is more than whether "the first post-conviction relief proceeding should have gone differently":

> [T]he ultimate issue is the fairness of the defendant's conviction and sentence. It is not enough for the defendant to prove that the first post-conviction relief proceeding should have gone differently. The defendant must also prove that the flaw in the prior post-conviction relief proceeding prevented the defendant from establishing a demonstrable and prejudicial flaw in the original trial court proceedings.

*Grinols v. State,* 10 P.3d 600, 620 (Alaska Ct. App. 2000), *aff'd,* 74 P.3d 889 (Alaska 2003); *see also Jackson v. Weber,* 637 N.W.2d 19, 23 (S.D. 2001) ("[I]neffective assistance of counsel at a prior habeas proceeding is not alone enough for relief in a later habeas action. Any new effort must eventually be directed to error in the original trial . . . .").[15] Thus, the Supreme Court's observation that "[s]urmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010), is particularly apt when it comes to postconviction counsel's assistance. If a

---

[15]The statutes in South Dakota have been amended since *Jackson* was decided to preclude relief based on the ineffectiveness of postconviction counsel. S.D. Codified Laws § 21-27-4 ("The ineffectiveness or incompetence of counsel, whether retained or appointed, during any collateral post-conviction proceeding is not grounds for relief under this chapter.").

petitioner surmounts that high bar and proves that postconviction counsel provided ineffective assistance, then the postconviction-counsel claim is sufficient to meet the undue-prejudice component of the good-cause showing required to excuse a procedural default under NRS 34.726(1).

*Actual prejudice to excuse procedural default under NRS 34.810 based on ineffective assistance of postconviction counsel*

Similarly, a postconviction-counsel claim is sufficient to establish cause to excuse the procedural default of another claim under NRS 34.810(1)(b) or NRS 34.810(2) if the petitioner proves both prongs of the ineffective-assistance test. *See Lynch v. Ficco*, 438 F.3d 35, 49 (1st Cir. 2006) ("In theory, *Strickland* attacks (including its own prejudice prong) go to the separate 'cause' as opposed to the 'prejudice' standards for overcoming default."); *see also Clabourne*, 745 F.3d at 377 (explaining that to establish "cause" to allow federal habeas review of trial-counsel claim that was defaulted in state court based on allegation of ineffective assistance of postconviction counsel, petitioner "must establish that his counsel in the state postconviction proceeding was ineffective" by establishing both prongs of the *Strickland* test). But to excuse the procedural default of another claim under NRS 34.810, the petitioner also must demonstrate actual prejudice. NRS 34.810(1)(b), (3).

If a petitioner who seeks to excuse a procedural default based on ineffective assistance of counsel makes the showing of prejudice required by *Strickland*, he also has met the actual prejudice showing



required to excuse the procedural default.[16] *See, e.g., Joseph v. Coyle*, 469 F.3d 441, 462-63 (6th Cir. 2006) (explaining that because the Supreme Court has held in *Strickler v. Greene*, 527 U.S. 263 (1999), that the materiality prong of a *Brady*[17] violation parallels the prejudice showing required to excuse a procedural default, the prejudice prong of the ineffective-assistance test, which is similar to the *Brady* materiality prong, also parallels the prejudice showing required to excuse a procedural default); *Lynch*, 438 F.3d at 49-50 (same); *Mincey v. Head*, 206 F.3d 1106, 1147 n.86 (11th Cir. 2000) (same); *accord State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) (following *Strickler* and equating *Brady* materiality with the prejudice required to excuse a procedural default under NRS 34.810).[18]

---

[16]Other courts have suggested that actual prejudice requires a greater showing than that required for the prejudice prong of an ineffective-assistance claim, *see, e.g., United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998); *see Armstrong v. Kemna*, 590 F.3d 592, 606 (8th Cir. 2010) (citing inconsistent decisions on the issue by different Eighth Circuit panels), but we are not persuaded that there is a useful distinction to be made.

[17]*Brady v. Maryland*, 373 U.S. 83 (1963).

[18]This court previously observed in *Lozada v. State*, 110 Nev. 349, 358, 871 P.2d 944, 949-50 (1994), that the two prejudice showings are "separate and distinct" but also suggested that when "both prejudice requirements happen to address the same concern," then the same showing will satisfy them. To the extent that these observations in *Lozada* are inconsistent with this decision, we disavow them.

 

With this foundation in mind, we turn to Rippo's claims and whether he has met both prongs of the ineffective-assistance test with respect to postconviction counsel and therefore has demonstrated cause and prejudice to excuse the applicable procedural bars based on the ineffective assistance of postconviction counsel.[19] Applying the two-prong test set forth above, we conclude that, with the exception of the first claim in his petition, Rippo failed to show that postconviction counsel was ineffective, and that he was not entitled to an evidentiary hearing on the allegations related to postconviction counsel because they either lack merit or were not supported by sufficient factual allegations, *see Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984) (stating that postconviction petitioner is entitled to evidentiary hearing when he asserts specific factual allegations that, if true, would entitle him to relief). We therefore conclude that although Rippo raised his postconviction-counsel claims within a reasonable time after they became available, he failed to demonstrate undue prejudice to excuse the procedural default under NRS 34.726(1) or cause and actual prejudice to excuse the procedural defaults under NRS 34.810, except as to the first claim in his

---

[19]Rippo's opening brief focuses primarily on the substantive merits of the grounds asserted in the petition, with limited attention paid to the threshold cause-and-prejudice inquiry based on the allegedly ineffective assistance provided by prior postconviction counsel. While the assertions of ineffective assistance of postconviction counsel in Rippo's briefs are not as detailed or focused as we would prefer, they also are not the kind of *"pro forma*, perfunctory" assertions of ineffective assistance that we discouraged in *Evans v. State*, 117 Nev. 609, 647, 28 P.3d 498, 523 (2001).

 

petition. As to the first claim, the district court should have conducted an evidentiary hearing.[20]

*Judicial bias (claim 1)*

In claim 1 of his petition, Rippo alleged that his convictions and death sentences are invalid because the trial judge was biased and that trial and appellate counsel were ineffective because they failed to adequately challenge the trial judge's alleged bias. He argues on appeal that the district court erred in applying the law-of-the-case doctrine and the procedural default under NRS 34.810(2) to this claim.

The judicial-bias claim is based on allegations that the trial judge (1) was the subject of a federal investigation at the time of trial, (2) knew that the Clark County District Attorney's Office and/or the Las Vegas Metropolitan Police Department (Metro) were involved in the investigation but failed to disclose that fact, and (3) was acquainted with a trial witness (Denny Mason)[21] but failed to disclose that fact because it would have incriminated the judge in the federal investigation.

This claim was raised on direct appeal and rejected by this court. *Rippo v. State (Rippo I)*, 113 Nev. 1239, 1248-50, 946 P.2d 1017, 1023-24 (1997). Normally, the law-of-the-case doctrine would preclude

---

[20]To the extent that Rippo relies on arguments other than ineffective assistance of postconviction counsel to establish cause and prejudice as to any particular defaulted ground for habeas relief, those arguments are addressed in the discussion of each defaulted claim.

[21]Mason was Denise Lizzi's boyfriend, and his name was on a credit card that Hunt found in Rippo's wallet after the murders.

 

further litigation of this issue. *See Hall v. State*, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975). Rippo argues, however, that the doctrine should not apply because the facts are substantially new or different than they were on direct appeal and because our prior decision was based on false representations by the State and the trial judge. *See Hsu v. Cty. of Clark*, 123 Nev. 625, 630, 173 P.3d 724, 729 (2007) (observing that federal courts recognize exception to the doctrine when "subsequent proceedings produce substantially new or different evidence").

There is nothing substantially new or different about the allegation that the trial judge should have disqualified himself because he was under federal investigation. This court held on direct appeal that "[a] federal investigation of a judge does not by itself create an appearance of impropriety sufficient to warrant disqualification." *Rippo I*, 113 Nev. at 1248, 946 P.2d at 1023. The inquiry required by the Supreme Court on remand—whether, considering all of the circumstances alleged, "the risk of bias was too high to be constitutionally tolerable," *Rippo IV*, 580 U.S. at ___, 137 S. Ct. at 907—does not alter that decision. As such, the law-of-the-case doctrine bars relitigation of the judicial-bias claim based solely on the federal investigation.[22]

---

[22]We agree with the Ninth Circuit's observation that when a judge has been *indicted* on criminal charges "a reasonable person with knowledge of all the facts pertaining to the nature of the indictment would question the ability of a judge facing prosecution to remain impartial as the presiding jurist in a criminal proceeding." *United States v. Jaramillo*, 745 F.2d 1245, 1246, 1248 (9th Cir. 1984). Here, the trial judge was
*continued on next page . . .*

In contrast, the other allegations of judicial bias were rejected on direct appeal because there was no evidence offered to support them. *Rippo I*, 113 Nev. at 1248, 946 P.2d at 1023 (observing that there was no evidence "that the State was . . . involved in the federal investigation . . . of [the trial judge]"); *id.* at 1249, 946 P.2d at 1024 (stating that "no evidence exists, beyond the allegations set forth by the defense, that [the trial judge] knew either Denny Mason or his alleged business partner"). Rippo now points to evidence that the State and the trial judge lied about or withheld information about the State's involvement in the federal investigation. That evidence indicates that, as part of a federal sting operation, a deputy district attorney with the Clark County District Attorney's Office brought a fictitious criminal case before the trial judge to see if the trial judge would accept a bribe from the defendant. Rippo further alleges that the trial judge learned about the sting operation and the deputy district attorney's involvement approximately two months before Rippo's trial started. Rippo also points to evidence that the trial judge provided favors to a business associate of Denny Mason and to Mason himself. The State has not refuted Rippo's factual allegations or the new evidence, instead relying solely on the law of the case. Because Rippo has pointed to substantially new or different evidence, we conclude

---

*. . . continued*
indicted *after* Rippo was tried and convicted, and he was suspended from the bench shortly after the indictment.

that the law-of-the-case doctrine does not bar relitigation of the judicial-bias claim based on that evidence.

But to reach the merits of the judicial-bias claim, Rippo also has to demonstrate good cause and actual prejudice to excuse his failure to reassert the judicial-bias claim in his first postconviction habeas petition. To that end, he asserts that prior postconviction counsel provided ineffective assistance in failing to further investigate the facts surrounding the judicial-bias claim and failing to repackage the judicial-bias claim as a trial- or appellate-counsel claim or to reassert it as a standalone claim.

We are not convinced that prior postconviction counsel was ineffective in omitting a trial- or appellate-counsel claim for two reasons. First, both trial and appellate counsel raised the judicial-bias issue, so any ineffective-assistance claim would have been belied by the record. Second, after evaluating trial and appellate counsel's performance based on "counsel's perspective at the time," *Strickland*, 466 U.S. at 689, it is not clear that trial and appellate counsel were deficient given the representations made on the record by the prosecution and the trial judge and the lack of any information available at that time to refute those representations. In that respect, we note that the new information provided by Rippo is based on documents filed in connection with and testimony at the trial judge's federal trials in 1997 and 1998, *after* Rippo's trial. That evidence clearly was not available to trial counsel, making it difficult to fault trial counsel for failing to discover and present it. Even if some of the documents were filed in the federal case while the direct appeal was pending, appellate counsel could not have expanded the record



before this court to include evidence that was not part of the trial record, *see Carson Ready Mix, Inc. v. First Nat'l Bank of Nev.*, 97 Nev. 474, 476-77, 635 P.2d 276, 277-78 (1981), making it similarly difficult to fault appellate counsel's performance. It thus appears that both trial and appellate counsel did the best they could under the circumstances.

In contrast, it appears that the new information could have been discovered and used by prior postconviction counsel to reassert the judicial-bias claim in the first petition. We acknowledge that in most circumstances where an issue was raised at trial, in a motion for new trial, and on appeal, all to no avail, postconviction counsel's failure to reassert the issue will be perfectly reasonable considering the law-of-the-case doctrine. *See generally In re Reno*, 283 P.3d 1181, 1210 (Cal. 2012) (observing that the mere omission of a claim that has been further developed by new counsel "'does not raise a presumption that prior habeas corpus counsel was incompetent'" (quoting *In re Clark*, 855 P.2d 729, 749 (Cal. 1993))). But the circumstances here are not that cut and dry. As this court's decision on direct appeal made clear, at least some of the allegations supporting the judicial-bias claim were rejected because trial and appellate counsel had no evidence to support them and had been told by the trial judge and the prosecution, on the record, that there was nothing to see here. Postconviction counsel may have been in a different position. In particular, it appears that the district attorney's involvement in the federal sting operation was well known, at the very least within the legal community in Clark County, at the time that the first postconviction petition was filed and litigated. In these unusual circumstances, there is a fair argument that reasonably competent postconviction counsel would

have investigated the issue further to determine whether there was evidence to support the prior allegations and perhaps overcome the law-of-the-case doctrine. Without an evidentiary hearing, we cannot be sure. Nor can we determine whether prior postconviction counsel looked into the matter and made an objectively reasonable decision not to reassert the judicial-bias claim.

Turning to the prejudice prong of the postconviction-counsel claim, we must consider the underlying merit of the judicial-bias claim. This is where the Supreme Court's directive on review of our prior decision becomes relevant. On the merits of the judicial-bias claim, the inquiry is "whether, considering all the circumstances alleged, the risk of bias was too high to be constitutionally tolerable." *Rippo IV*, 580 U.S. at ___, 137 S. Ct. at 907. The answer to that question may be yes, if Rippo's allegations that the trial judge knew about the State's involvement in the federal sting operation but lied about it and falsely denied that he had any connection to Mason or his business partner to avoid implicating himself in the federal bribery investigation are true. Because the substantive claim therefore may have merit based on the new information, we conclude that discovery and an evidentiary hearing is needed to determine whether the allegations supporting the judicial-bias claim are true and, if so, whether prior postconviction counsel provided ineffective assistance by failing to investigate and re-assert the judicial-bias claim.

*Prosecutorial misconduct (claims 2 and 9)*

Rippo raised numerous allegations of prosecutorial misconduct that appear in claims 2 and 9 in his second habeas petition. Those allegations are that the State violated *Brady v. Maryland*, 373 U.S. 83

SUPREME COURT
OF
NEVADA

(O) 1947A

34

(1963) (claim 2); the State failed to correct false testimony by its witnesses (claim 2); the State failed to disclose and misrepresented its involvement in the federal investigation of the trial judge (claim 2); the prosecutors made improper arguments to the jury (claim 2); and the State intimidated a defense witness (claim 9).[23] These claims were primarily raised as trial error, but claim 2 also included summary allegations that trial and appellate counsel were ineffective to the extent that they did not litigate or failed to fully litigate or uncover the misconduct alleged in that claim. The district court determined that both claims 2 and 9 were procedurally defaulted under NRS 34.810(2) and that claim 2 was also defaulted under NRS 34.810(1)(b). The court also observed that several of the misconduct allegations were subject to the law-of-the-case doctrine. *See Hall v. State*, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975).

*Brady allegations*

We first address the arguments in claim 2 that are based on *Brady* violations. "*Brady* and its progeny require a prosecutor to disclose evidence favorable to the defense when that evidence is material either to

---

[23]Included in his allegations of prosecutorial misconduct, Rippo claims that the State violated a discovery order (claim 2) as evidenced by a series of nondisclosures concerning the existence of a jailhouse informant, a forensic report, exculpatory statements a witness made to the prosecutor, and the State's release of "twelve inches of document discovery on the day of calendar call." Absent from Rippo's claim, however, is any allegation of prejudice even assuming his contentions are true. Accordingly, he has not demonstrated that postconviction counsel was ineffective in this regard.

guilt or to punishment." *State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) (quoting *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000)). To establish a *Brady* violation, the defendant must show (1) that the State withheld evidence, (2) which is favorable to the accused because it is exculpatory or impeaching, and (3) that prejudice resulted because the evidence was material, i.e., that there is a reasonable possibility of a different result had there been disclosure. *Id.* at 599-600, 81 P.3d at 8. When a *Brady* claim is raised in an untimely or successive petition, the cause-and-prejudice showing can be met based on the second and third prongs required to establish a *Brady* violation. *Id.* at 599, 81 P.3d at 8. The *Brady* allegations here involve claims that the State withheld evidence that could have been used to impeach several of the State's witnesses: Thomas Sims, Thomas Christos, and Michael Beaudoin.[24]

The *Brady* allegations related to Sims and Christos focus on whether the State withheld evidence of cooperation agreements whereby these witnesses received favorable treatment in exchange for testifying. A

---

[24]The petition below made summary allegations (claim 2, ¶¶ 13, 14) that the State failed to disclose exculpatory or impeachment evidence related to Donald Hill (aka William Burkett) and David Levine, but it included no specific allegations regarding the *Brady* violation related to Hill and made a summary allegation that Levine "expected to receive a favorable parole recommendation in exchange for his testimony." In his appellate briefs, Rippo argues that both witnesses testified falsely. The allegation as to Hill appears to involve a post-trial recantation, while the allegation as to Levine appears to involve a *Giglio* claim—that the prosecution knowingly used false testimony. *See Giglio v. United States*, 405 U.S. 150 (1972). Those arguments are addressed *infra*.

promise made by the prosecution to a key witness in exchange for the witness's testimony constitutes impeachment evidence that must be disclosed under *Brady*. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). As the district court observed, Sims and Christos were thoroughly "cross-examined [during trial] regarding continuances, quashed bench warrants, and future benefits" with respect to other criminal charges. Both witnesses denied being promised, expecting, or receiving any benefits in exchange for their testimony. A prosecutor also testified that Sims was not promised anything in exchange for his testimony, and the jury was aware that Sims' pending felony case had been continued repeatedly over the course of several years, the extent to which the delay in that proceeding may have benefited him, and the prosecutor's reasons for agreeing to the continuances.[25] Rippo's allegations are based on records related to the disposition of various criminal cases involving Sims and Christos before and after they testified. But those favorable dispositions are a matter of public record that was not and could not be withheld by the State. They also do not suffice to establish either explicit or tacit agreements between the State and these witnesses in exchange for their testimony. *See Bell v. Bell*, 512 F.3d 223, 233-34 (6th Cir. 2008) (concluding that handling of witness's case does not prove existence of an

---

[25]Rippo suggests that postconviction counsel was ineffective for failing to raise a trial-counsel claim based on trial counsel's failure to have the prosecutor's testimony read into the record to impeach Sims. The record, however, shows that the prosecutor testified before the jury at trial.

(O) 1947A

agreement between prosecution and witness); *Middleton v. Roper*, 455 F.3d 838, 854 (8th Cir. 2006) (concluding that speculation based on sequence of events in which witnesses obtained favorable dispositions of criminal charges after testifying against defendant was not sufficient to demonstrate that prosecution withheld evidence of deal offered to witnesses in exchange for their testimony); *Shabazz v. Artuz*, 336 F.3d 154, 165 (2d Cir. 2003) ("The government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases without disclosing to the defendant its intention to do so, *provided* that it does not promise anything to the witnesses prior to their testimony. . . . [T]he fact that a prosecutor afforded favorable treatment to a government witness, standing alone, does not establish the existence of an underlying promise of leniency in exchange for testimony."). Rippo therefore has not made sufficient factual allegations as to Sims and Christos to support a finding that the State violated *Brady*. Nor are the speculative allegations offered 12 years after trial based on public information that has long been available sufficient to warrant an evidentiary hearing. *See Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). For these reasons, the *Brady* claim as to these witnesses is not sufficient itself to establish cause and prejudice.[26] The

---

[26]As a separate but related subclaim, Rippo argues that the State violated *Brady* by allowing Sims and Christos to testify falsely that they received no promises of leniency or favorable treatment in exchange for their testimony. This argument fails, however, as Rippo has not alleged
*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

38

deficiencies in Rippo's *Brady* claim as to these witnesses also undermine his effort to rely on the alleged ineffective assistance of postconviction counsel as cause to excuse his failure to raise the *Brady* claim in the first petition.

The *Brady* allegation involving Beaudoin is similar to those involving Sims and Christos, but where Rippo failed to allege any additional facts sufficient to establish a *Brady* violation related to those witnesses, Rippo has offered additional specific allegations with respect to Beaudoin. With his petition, Rippo submitted a declaration dated May 18, 2008, in which Beaudoin indicates that he was arrested on felony drug charges after he began cooperating with the prosecution in this case and that he contacted one of the attorneys prosecuting Rippo "at some point before [he] was scheduled to testify" and asked for help since he was helping the prosecution by testifying against Rippo.[27] According to the declaration, as a result of that call, the district attorney's office dropped one of the charges and reduced the other from a felony to a gross misdemeanor, and Beaudoin avoided going to prison on the charges. The declaration indicates that if "anyone had bothered to ask [him] about these matters, [he] would have provided them with all of the information that is

---

*. . . continued*
sufficient facts to support the allegation that Sims and Christos testified falsely.

[27]The State does not acknowledge or address the declaration in its appellate brief, but we are not convinced that an evidentiary hearing is warranted on this claim based solely on that omission.

SUPREME COURT
OF
NEVADA

(O) 1947A

contained in [the] declaration."[28] The latter representation seems questionable since Beaudoin was asked about inducements at trial and testified that there had been none. It is entirely possible that his trial testimony was truthful because the declaration does not indicate that the prosecutor made any explicit or tacit promises to Beaudoin before he testified. As discussed with respect to the *Brady* claim involving Sims and Christos, absent such a promise by the prosecution, there was no *Brady* violation. Regardless, we also are not convinced that the information in the Beaudoin declaration is material as required to establish a *Brady* violation.

Beaudoin had already testified before the grand jury and his trial testimony was consistent with that prior testimony, thus undermining the impeachment value of the information in the postconviction declaration, and Beaudoin was not such a key witness for the prosecution that additional impeachment of him beyond that presented at trial (his criminal record) would lead to a reasonable possibility of a different outcome at trial. *Cf. Harris v. Lafler*, 553 F.3d 1028, 1033-34 (6th Cir. 2009) (concluding that there was reasonable probability of different outcome at trial had prosecution disclosed promises of leniency or favorable treatment in exchange for witness's testimony where witness provided only eyewitness account of shooting and identified

---

[28]Beaudoin also states in the declaration that he believes that Rippo "is responsible for the crime" but does not "believe that he should receive the death penalty because it's not going to bring Denise back."

defendant as the shooter, providing only evidence that directly linked defendant to the shooting). Thus, even accepting the representations in the declaration as true and assuming that there was a promise of favorable treatment in exchange for Beaudoin's testimony shortly before he testified at trial, the failure to disclose that promise does not undermine our confidence in the jury's verdict. *See Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995) (explaining that materiality prong of *Brady* involves whether the violation undermines confidence in the verdict). For these reasons, we conclude that this *Brady* claim lacks merit and cannot itself establish cause and prejudice and that Rippo has not demonstrated that postconviction counsel was ineffective in failing to raise this *Brady* claim.

*False testimony*

Rippo also alleges prosecutorial misconduct related to three jailhouse informants: David Levine, James Ison, and Donald Hill (aka William Burkett). These witnesses testified about admissions that Rippo made to them while he was incarcerated pending trial in this case. Each informant testified that he had known Rippo before the murders and that Rippo admitted his involvement in the murders. Based on handwritten declarations provided by Levine, Ison, and Hill in connection with the second postconviction petition, Rippo asserts that these witnesses gave false testimony. We first address the allegations involving Levine and Ison and then turn to those involving Hill.

Rippo alleges that prosecutors or police officers provided Levine and Ison with information about the case that they then related at trial as information obtained from Rippo, making their testimony appear

more credible. Rippo asserts that Levine and Ison could have been impeached with this information had it been disclosed to the defense. Although couched in terms of the State's alleged failure to disclose material exculpatory and impeachment information, Rippo's claim speaks more to the prosecution knowingly presenting false or misleading testimony. *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) (requiring prosecutor to correct testimony if he learns of its falsity after the testimony has been presented). Where the prosecution knowingly presents false or misleading testimony or fails to correct false testimony after learning of its falsity, a new trial is required if "the false testimony used by the State in securing the conviction . . . may have had an effect on the outcome of the trial." *Napue*, 360 U.S. at 272. The claim is procedurally barred under both NRS 34.726 and NRS 34.810. Rippo appears to press two arguments on appeal to excuse the procedural bars.

First, he relies on the alleged withholding of evidence by the State. *Cf. State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) (explaining that withholding of favorable evidence may establish cause for raising *Brady* claim in an untimely and/or successive petition). This argument is insufficient because any falsity in Levine's and Ison's testimony about Rippo's admissions would have been known to Rippo at the time that the witnesses testified. *Cf. West v. Johnson*, 92 F.3d 1385, 1398-99 (5th Cir. 1996) (rejecting *Brady* claim that prosecution withheld evidence suggesting that defendant fabricated his confession because defendant "knew whether or not he had taken the necklace"); *United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990) (concluding that there

SUPREME COURT
OF
NEVADA

(O) 1947A

was no improper suppression of evidence under *Brady* where evidence at issue involved defendant's whereabouts, which were within defendant's knowledge).

Second, Rippo relies on the alleged ineffective assistance of postconviction counsel to excuse the procedural bars to consideration of the claim as to Levine and Ison. The district court apparently rejected this argument on the prejudice prong of the ineffective-assistance claim, concluding that the declarations offered by Rippo do not undermine confidence in the verdict because Levine and Ison have not recanted their testimony that Rippo admitted his involvement in the murders. We agree with the district court's reading of the declarations provided by Levine and Ison.

Although the information in the declarations could have been used to impeach these witnesses had the defense been aware of it, we are not convinced that there is a reasonable likelihood that the allegedly false portions of Levine's or Ison's testimony could have affected the jury's verdict (*Giglio/Napue* standard) or that there is a reasonable possibility of a different outcome had the information been disclosed (*Brady* standard). Both witnesses were impeached regarding discrepancies between their statements to police and their trial testimony. Their credibility was enhanced more by their long-term acquaintance with Rippo than by the details that their declarations bring into question. In light of those circumstances and the fact that neither witness has recanted his testimony that Rippo confessed to his involvement in the murders, we agree with the district court's assessment that Rippo cannot demonstrate prejudice based on postconviction counsel's failure to raise claims related

 

to Levine's and Ison's testimony.[29] Accordingly, the postconviction-counsel claim lacks merit and therefore is not cause to excuse the procedural default of this claim.

Rippo's allegations as to Hill are of a different nature in that they appear to involve a partial recantation rather than the prosecution withholding evidence or knowingly presenting false testimony. Hill's postconviction declaration states that, contrary to his testimony at trial, Rippo never suggested that he wanted to have Hunt killed and that as far as Hill knew at the time, Hunt was not going to testify against Rippo.[30] The declaration does not suggest that the prosecution knew or had reason to know that this part of Hill's testimony was false, and although this claim is included in a section of Rippo's appellate brief that is focused on prosecutorial misconduct, Rippo does not argue that the prosecution was aware that Hill testified falsely or suppressed evidence that could have

---

[29]We recognize that some of the details brought into question by the declarations arguably corroborated Hunt's testimony and therefore lent credibility to her account of the murders, but we are not convinced that any of those corroborating elements in themselves were of such significance that undermining them would also undermine our confidence in the jury's verdict.

[30]The declaration also states that Hill's girlfriend was not incarcerated at the women's prison in Carson City with Hunt during the relevant time period. Hill testified similarly at trial: when asked at trial whether his fiancée was still at the women's prison, he responded that she was not.

been used to impeach Hill.[31] Nor does the declaration call into question Hill's trial testimony that Rippo admitted that he strangled the victims and put their bodies in a closet. Given these deficiencies, we cannot conclude that the district court erred in determining that Rippo had not demonstrated good cause and prejudice to excuse the procedural default of this claim.

*Prosecutorial misconduct in closing argument*

Rippo also asserts that the prosecutors committed misconduct during guilt- and penalty-phase argument. We first address the claims that had been raised before on direct appeal and then turn to the new claims.

The allegations of prosecutorial misconduct that were raised and rejected on direct appeal, *Rippo v. State (Rippo I)*, 113 Nev. 1239, 1253-55 & n.5, 946 P.2d 1017, 1026-28 & n.5 (1997), are subject to the law-of-the-case doctrine, which precludes further litigation of those claims. *See Hall v. State*, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975). Given that further litigation of those claims would have been barred by the law-of-the-case doctrine, we are not convinced that postconviction counsel's failure to raise them again fell outside the wide range of professionally

---

[31]Rippo's appellate brief suggests that Hill revealed his status as a "career criminal informant" for the first time on cross-examination at trial. But in the trial testimony cited in the brief, Hill, who had been incarcerated for all but nine months between 1982 and 1996, testified that he had acted as an informant in two cases, including this one. The citation therefore does not appear to support the characterization of Hill as a "career criminal informant."

competent assistance. Nor are we convinced by Rippo's suggestion that he has good cause to raise these claims again because they must be considered cumulatively. In particular, the assertion of "cumulative error" as cause to raise these claims anew ignores our prior determination that there was no error with respect to the claims that previously were rejected on appeal on their merits. Rippo does not explain how argument by a prosecutor that has been found not to be error can now be aggregated to comprise a new claim that falls outside the law-of-the-case doctrine. *See In re Reno*, 283 P.3d 1181, 1223-24 (Cal. 2012) (rejecting "cumulative error" explanation for capital petitioner to raise a claim again that was rejected on its merits in a prior appeal and explaining that such a claim "cannot logically be used to support a cumulative error claim because [the appellate court has] already found there was no error to cumulate").

One prosecutorial-misconduct claim that was raised on appeal (the characterization of Rippo as "evil" during penalty-phase argument) would not have been subject to the law-of-the-case doctrine because it was not preserved, and therefore this court chose not to consider it on the merits. 113 Nev. at 1260, 946 P.2d at 1030. But that claim and the other new claims of prosecutorial misconduct are procedurally barred under NRS 34.726 and NRS 34.810 because they were untimely and could have been raised before. Rippo generally asserts that postconviction counsel was ineffective for omitting trial- or appellate-counsel claims based on these alleged instances of prosecutorial misconduct. We conclude, however, that Rippo has not demonstrated any misconduct (i.e., error) as to the challenged comments by the prosecutor; therefore he has not met either prong of the omitted trial-counsel claim or the performance prong as

SUPREME COURT
OF
NEVADA

(O) 1947A

to the omitted appellate counsel. The postconviction-counsel claim therefore lacks merit and is not sufficient cause to excuse the procedural default of these trial-error and ineffective-assistance claims regarding prosecutorial misconduct in argument at the guilt and penalty phases. And in the absence of any error, those claims also could not be cumulated with the instances of prosecutorial misconduct that were found to have merit on direct appeal (the reference to evidence not presented at trial and the comment on Rippo's failure to call a witness) but were determined to be harmless both individually and cumulatively, *see Rippo I*, 113 Nev. at 1253-55 & n.5, 946 P.2d at 1026-28 & n.5. On that basis, Rippo also cannot rely on "cumulative error" as cause to raise the new claims of prosecutorial misconduct. *See Reno*, 283 P.3d at 1223-24.

*Witness intimidation*

The allegation of improper witness intimidation (claim 9) was rejected by this court on direct appeal. *Rippo I*, 113 Nev. at 1251, 946 P.2d at 1025. Given that further litigation of the issue is precluded by the law-of-the-case doctrine, *see Hall*, 91 Nev. at 315, 535 P.2d at 798, we are not convinced that postconviction counsel's failure to re-raise this issue fell outside of the wide range of professionally competent assistance. We also reject the idea that the need to consider claims of prosecutorial misconduct cumulatively provides cause to raise this claim again where it was rejected previously on the merits. *See Reno*, 283 P.3d at 1223-24.

*Failure to investigate and present mitigating evidence (claim 3)*

Rippo argues that the district court erred in procedurally defaulting his claim that trial counsel were ineffective for failing to investigate and present mitigating evidence and submit a special verdict

form listing possible mitigating circumstances. To excuse the procedural default, Rippo asserts that postconviction counsel was ineffective for failing to raise the trial-counsel claim. We conclude that this claim is not sufficient to excuse the procedural default because Rippo fails to meet either prong of the *Strickland* test to support a viable trial-counsel claim and therefore cannot demonstrate that postconviction counsel was ineffective in failing to raise it.

Rippo claims that postconviction counsel should have asserted an ineffective-assistance claim based on trial counsel's failure to present evidence that he suffered from a neuropsychological impairment. As support, he relies on a neuropsychological evaluation conducted 12 years after trial, which concluded that he had "mild neurocognitive dysfunction" and Attention Deficit Hyperactivity Disorder and Obsessive-Compulsive Disorder. But the reasonableness of counsel's performance is evaluated "from counsel's perspective at the time," without "the distorting effects of hindsight." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). At the time of trial in this case, counsel had access to multiple psychological evaluations of Rippo from years before trial and just before trial, none of which revealed any psychoses, neuropsychological impairments, or major affective disorders. Considering the evaluations available to trial counsel, we cannot fault postconviction counsel for not asserting that trial counsel's failure to seek additional evaluations fell outside "the wide range of reasonable professional assistance." *Id.*

Rippo further claims that postconviction counsel should have asserted an ineffective-assistance claim based on trial counsel's failure to present testimony from a violence risk assessment expert and an

SUPREME COURT
OF
NEVADA

(O) 1947A

48

institutionalization expert to establish that he would function well in a structured prison setting. Trial counsel did present some lay testimony to this effect from a prison vocational instructor who had interacted with Rippo. We are not convinced that trial counsel's failure to present an expert to provide similar testimony was unreasonable. Nor does the failure to present such testimony undermine our confidence in the outcome of the penalty hearing, *see id.* at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."), particularly since any expert opinion would have been challenged on cross-examination with evidence that Rippo was found with weapons in his cell and had exposed himself to and threatened to kill a prison guard, the same as the witness who did testify at the penalty hearing. For these reasons, the ineffective-assistance-of-trial-counsel claim lacks merit, and we cannot fault postconviction counsel for failing to assert it.[32]

---

[32]Rippo also claims that postconviction counsel should have challenged trial counsel's failure to prepare a social history and provide it to a mental health expert for evaluation. As support, he provided a lengthy social history and an evaluation from psychologist Dr. Jonathan Mack, who opined that Rippo experienced "significant psychosocial trauma in the home of his mother and step-father, and possibly earlier in the home of his biological father and mother," which "caused a free floating anxiety" leading to obsessive-compulsive and drug-addictive tendencies, and that Rippo had a suppressed variant of post-traumatic stress disorder that was difficult to diagnosis perhaps due to "conscious and unconscious repression of family-of-origin trauma." This new mitigation evidence lacks sufficient persuasiveness to have altered the outcome of the penalty hearing had it been presented to the jury. We therefore are not convinced
*continued on next page . . .*

 

Rippo also claims that postconviction counsel should have asserted an ineffective-assistance claim based on trial counsel's failure to present evidence that Rippo was sexually and physically abused by his stepfather James Anzini. At the penalty phase, trial counsel presented one witness who testified about Rippo's childhood and upbringing, his sister Stacie. She described Rippo as the "family clown" and a "great brother" who was protective of and encouraging to his sisters. She also testified about their childhood, explaining that life with Anzini was difficult. He was a compulsive gambler and often took Rippo's allowance and paychecks to support his gambling habit. He frequently pushed Rippo around and told him that he would never amount to anything, and he degraded women in front of Rippo. So trial counsel did present some evidence at the penalty phase on the topic of Rippo's childhood and upbringing. Rippo argues, however, that the presentation fell short due to trial counsel's failure to adequately investigate and interview his family members and that reasonably competent counsel would have uncovered evidence of sexual and physical abuse.

To support his claim, Rippo filed several declarations by various family members, including his sister Stacie; his father; his former stepmother; and Anzini's ex-wife, sister, brother-in-law, former sister-in-law, and sons (Rippo's stepbrothers). In her declaration, Stacie recalls

----

*. . . continued*
that postconviction counsel was ineffective in omitting this trial-counsel claim.

that Anzini was abusive in that he was demeaning toward women; played games that frightened her, her sister, and Rippo; and was extremely aggressive when he played board games with the children, calling Rippo a "sissy" when he lost to his sisters. She states that Anzini enjoyed scaring and taunting the children and that their mother and Anzini had violent arguments. She describes Anzini as physically abusive to the children but that she was unaware of "what, if anything [Anzini] did to [Rippo] that may have had any sexual overtones." In the other declarations, Anzini is described as physically and verbally abusive. Most of the declarants never saw instances of physical abuse involving Rippo, but they suspected that Anzini had physically abused Rippo based on his general character for such abuse or because they saw bruises on Rippo or his sisters that they felt were not sufficiently explained. Many of the declarants also suggested that Rippo had been a happy, good boy and that being raised by Anzini must have changed him. None of the declarations suggest that Anzini sexually abused Rippo.

We first address the performance prong on the omitted trial-counsel claim as it informs whether postconviction counsel's omission of that claim was ineffective. When it comes to preparing for the penalty phase of a capital case, trial counsel generally has a duty to conduct "a thorough investigation of the defendant's background." *Williams v. Taylor*, 529 U.S. 362, 396 (2000). But *Strickland* does not require the same investigation in every case. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

The test "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

Here, Stacie's declaration indicates that trial counsel met with her and other unidentified members of Rippo's family before the penalty hearing to find out if any of them were willing to testify during the penalty hearing and Stacie agreed to do so. She suggests that her testimony would have been more detailed about the abuse perpetrated by Anzini if trial counsel had better prepared her. But at the penalty hearing, trial counsel asked Stacie broad questions about how Anzini was around the house and how he was toward Rippo, and in response she never suggested significant physical abuse even though it is clear that she knew Rippo's upbringing was important when she observed at the end of her testimony that "a lot of your upbringing directs your life." Even assuming that trial counsel spent a limited amount of time with Stacie before she testified, we are not convinced that counsel's acts or omissions in this respect were outside the wide range of professionally competent assistance.

We are not as confident addressing the performance prong with respect to the more general allegation that trial counsel failed to interview and present the testimony of other family members. Stacie's declaration does not identify the other family members who were present for the meeting with counsel before the penalty hearing, but the family members who provided declarations for the postconviction petition indicate that they were never contacted by trial counsel. Absent an evidentiary hearing, it is difficult to determine whether trial counsel considered contacting other family members or had any reason to believe

SUPREME COURT
OF
NEVADA


(O) 1947A

52

such an investigation would be fruitful. In this respect, Stacie's testimony at the penalty phase and the letter that counsel read into the record from Rippo's mother suggest that no one led trial counsel to believe there was more significant physical abuse or any sexual abuse and therefore counsel's investigation and presentation may have been within the wide range of professionally competent assistance in this respect. In the same vein, Rippo has not specifically alleged that he informed trial counsel about the abuse or identified any family members who could testify to the abuse. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); *see also Waldrop v. Thigpen*, 857 F. Supp. 872, 915 (N.D. Ala. 1994) ("The attorney's duty under the Sixth Amendment is to conduct a *reasonable* investigation, not such an exhaustive investigation that all conceivable mitigating evidence is necessarily uncovered."). Although we believe that Rippo has not overcome the presumption that trial counsel's performance was within the wide range of professionally competent assistance, we also address the prejudice prong below.

Considering all of the information in the declarations, we are not convinced that "there is a reasonable probability that at least one juror would have struck a different balance" between life and death. *Wiggins v. Smith*, 539 U.S. 510, 537 (2003). In addition to Stacie's testimony and the letter from Rippo's mother, the defense presented testimony about Rippo's good behavior in prison and for a period of time while he was on parole

 

and living with his mother and stepfather, Robert Duncan. The testimony at the penalty hearing and the postconviction declarations describe Rippo as a likeable and kind person who was skilled and intelligent. Rippo also made a statement in allocution and expressed remorse for the victims' deaths. Although some of the declarations include descriptions of instances where Anzini emotionally and verbally abused Rippo, aside from Stacie's declaration, the postconviction declarations detail little in the way of specific instances of physical abuse involving Rippo; many of the declarants indicate that they suspected such abuse but had not witnessed it or were told by someone else that Anzini was abusive toward everyone in the house. Against this mitigating evidence, the State proved three valid aggravating circumstances: (1) that Rippo had a prior violent felony conviction for sexual assault, (2) that he was under a sentence of imprisonment at the time of the murders, and (3) that the murders involved torture. *See Rippo v. State (Rippo II)*, 122 Nev. 1086, 1093, 1098, 146 P.3d 279, 284, 287 (2006) (holding that three aggravating circumstances were invalid under *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004), but that the jury's consideration of those aggravating circumstances was harmless beyond a reasonable doubt). We have characterized the mitigating evidence presented at trial in this case as "not particularly compelling," *Rippo II*, 122 Nev. at 1094, 146 P.3d at 284, and the additional mitigating evidence does not add anything compelling enough for us to conclude that there is a reasonable probability that at least one juror would have struck a different balance—either in weighing the aggravating and mitigating circumstances or choosing between life and death. *See Cullen*, 563 U.S. at 189 (explaining that *Strickland's*

SUPREME COURT
OF
NEVADA

(O) 1947A

54

reasonable probability standard "requires a 'substantial,' not just 'conceivable,' likelihood of a different result" (quoting *Harrington*, 562 U.S. at 112)). On the latter point of the ultimate choice between life and death, it is significant that Rippo took two lives. Having determined that the omitted trial-counsel claim lacks merit, Rippo has not demonstrated cause to excuse the procedural default of that claim based on ineffective assistance of postconviction counsel.

Finally, Rippo claims that trial counsel should have argued specific mitigating circumstances and requested a special verdict form listing specific mitigating circumstances. Postconviction counsel raised this trial-counsel claim in the first petition. At the evidentiary hearing on that petition, trial counsel testified that they chose not to create a list of specific mitigating circumstances—other than the statutory mitigating circumstances—because they wanted the jury "to think of absolutely anything as a mitigating factor." We cannot fault postconviction counsel for not pursuing this claim further on appeal given that the testimony establishes that it was a strategic decision and there is no reasonable probability that this court would have granted some form of relief based on this claim. *See Howard v. State*, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990) ("Tactical decision are virtually unchallengeable absent extraordinary circumstances."), *abrogated on other grounds by Harte v. State*, 116 Nev. 1054, 1072 n.6, 13 P.3d 420, 432 n.6 (2000).

*Disclosure of records (claim 8)*

Rippo argues that the district court erred in dismissing his claim related to the trial court's decision to quash a subpoena for records that were in the possession of the Department of Parole and Probation.

SUPREME COURT
OF
NEVADA

(O) 1947A

55

He argues that the trial court infringed on his constitutional right to present a defense and confront the witnesses against him, that trial counsel failed to "adequately litigate the disclosure of the records," and that appellate counsel should have raised the issue on direct appeal. To excuse the procedural default of these claims under NRS 34.726(1) and NRS 34.810, Rippo asserts that prior postconviction counsel was ineffective for failing to raise them. We conclude that the postconviction-counsel claim lacks merit and therefore the trial-error and ineffective-assistance claims are defaulted.

The postconviction-counsel claim lacks merit as to the allegation of trial error because the alleged error was invited. When the trial court held a hearing on the State's motion to quash the subpoena, trial counsel represented that he and the prosecution had "worked something out informally" and he did not have an objection to the court granting the motion to quash. Under the circumstances, Rippo cannot complain that the trial court erred when his counsel participated in and invited the alleged error in granting the motion to quash. *See Carter v. State*, 121 Nev. 759, 769, 121 P.3d 592, 599 (2005) ("A party who participates in an alleged error is estopped from raising any objection on appeal."). There similarly is no basis for concluding that postconviction counsel was deficient for not presenting a trial-error claim that was both procedurally defaulted (under NRS 34.810(1)(b) because it could have been raised on appeal) and without merit. Accordingly, the postconviction-counsel claim is not sufficient to excuse the procedural default of the trial-error claim.

The postconviction-counsel claim also lacks merit as cause and prejudice with respect to the defaulted allegations of ineffective assistance of trial and appellate counsel. The appellate-counsel claim fails on the prejudice prong of *Strickland* because there is no reasonable probability that this omitted issue would have had success on appeal, *see Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1113-14 (1996) (explaining *Strickland* prejudice in context of appellate-counsel claim), given trial counsel's representation that the issue had been resolved informally and that there was no objection to granting the motion to quash, *see Carter*, 121 Nev. at 769, 121 P.3d at 599 ("A party who participates in an alleged error is estopped from raising any objection on appeal."). The trial-counsel claim fails on both prongs. As to the deficiency prong, the record indicates that trial counsel had come to a resolution on the issue with the prosecution and Rippo has not made any factual allegations to the contrary. As to the prejudice prong, Rippo has not substantiated his claim that the records would have given rise to expert testimony; even now, over a decade after trial, Rippo has not identified an expert willing to offer testimony about his future dangerousness and amenability to a structured living environment based on the records. He therefore has not established a reasonable probability of a different outcome at trial had counsel challenged the motion to quash the subpoena. Because the appellate- and trial-counsel claims fail, so does the postconviction-counsel claim as cause and prejudice to excuse the procedural default of the appellate- and trial-counsel claims.

SUPREME COURT
OF
NEVADA


(O) 1947A

Rippo also argues that the district court erred in dismissing his claim that the trial court erred by preventing him from cross-examining Diana Hunt with the results of a pretrial psychiatric evaluation. To excuse the procedural default of this alleged trial error under NRS 34.726(1) and NRS 34.810, Rippo asserts that prior postconviction counsel was ineffective based on his failure to assert trial- and appellate-counsel claims related to this alleged trial error. We conclude that the postconviction-counsel claim lacks merit.

First, because Rippo has not identified a discovery motion or other request for the evaluation that was denied by the trial court, he has not demonstrated a viable issue that reasonably competent appellate counsel could have raised. Second, because Rippo fails to allege that trial counsel knew about the evaluation or explain what additional investigation trial counsel should have conducted that would have uncovered the evaluation, assuming that counsel was not aware of it, he has not demonstrated that trial counsel's conduct did not fall within the range of reasonable professional assistance. It further appears that there was no viable prejudice argument to support a trial-counsel claim as trial counsel thoroughly cross-examined Hunt and challenged her credibility, and Hunt admitted her criminal history, involvement in the charged crimes, and agreement to testify against Rippo to avoid murder charges. Given the lack of any substantial basis on which to challenge trial or appellate counsel's performance, the postconviction-counsel claim lacks

 

merit and cannot be sufficient cause to excuse the procedural default of the trial-error claim.[33]

*Actual innocence*

Where, as here, a petitioner cannot demonstrate cause and prejudice, the district court may nevertheless excuse a procedural bar if the petitioner demonstrates that failing to consider the merits of any constitutional claims would result in a fundamental miscarriage of justice. *Pellegrini v. State,* 117 Nev. 860, 887, 34 P.3d 519, 537 (2001). Typically, a fundamental miscarriage of justice in this context requires "a colorable showing" of actual innocence. *Id.* And we have allowed such gateway claims of actual innocence with respect to a capital petitioner's death eligibility. *Id.* Rippo contends that he is ineligible for the death penalty

---

[33]Rippo also challenges the district court's denial of the following claims related to (1) inadequate voir dire of potential jurors (claim 4), (2) admission of prior bad act evidence (claim 5), (3) guilt phase jury instructions (claims 6, 7, 11, and 19), (4) admission of victim-impact evidence (claim 12), (5) penalty phase jury instructions (claims 16 and 17), and (6) admission of gruesome photographs (claim 18). We conclude that Rippo failed to overcome the applicable procedural bars and/or the law-of-the-case doctrine and therefore the district court properly denied these claims. We further reject Rippo's claim that cumulative error requires reversal of the judgment of conviction. Any deficiencies in postconviction counsel's representation, considered individually or cumulatively, *see McConnell,* 125 Nev. at 259 n.17, 212 P.3d at 318 n.17, did not prejudice him. Finally, we reject Rippo's claim that the lethal injection protocol is unconstitutional, as this claim is not cognizable in a postconviction petition for a writ of habeas corpus. *See id.* at 248-49, 212 P.3d at 311.

 

because the three aggravating circumstances supporting his death sentence are invalid.[34]

Rippo argues that insufficient evidence supports the torture aggravating circumstance, a claim we rejected on direct appeal. *See Rippo v. State (Rippo I)*, 113 Nev. 1239, 1263-64, 946 P.2d 1017, 1032-33 (1997). He acknowledges our prior review but argues that we never determined whether the evidence showed that he "inflict[ed] pain beyond the killing itself." *Hernandez v. State*, 124 Nev. 978, 984, 194 P.3d 1235, 1239 (2008), *overruled on other grounds by Armenta-Carpio v. State*, 129 Nev. 531, 532, 306 P.3d 395, 396 (2013). His claim is patently without merit based on this court's observation regarding the evidence of torture inflicted on the victims, which comports with the requirement identified by Rippo. *Rippo I*, 113 Nev. at 1264, 946 P.2d at 1033 ("There seems to be little doubt that when Rippo was shocking these victims with a stun gun, he was doing so for the purpose of causing them pain and terror and for no other purpose. Rippo was not shocking these women with a stun gun for the purpose of killing them but, rather, it would appear, with a purely 'sadistic purpose.'").

---

[34]Rippo challenged two of the aggravating circumstances in claims 13 and 14 in his petition. Those claims were subject to the same procedural bars discussed in this opinion. The claims are addressed here only to the extent that they are the basis for Rippo's assertion of actual innocence as a gateway to consideration of his procedurally defaulted claims.

Rippo complains that the other two aggravating circumstances are invalid for two reasons. First, he argues that the prior conviction related to both aggravating circumstances was the product of an invalid guilty plea. Based on our review of the record, we disagree that his guilty plea was involuntarily or unknowingly entered. Second, relying on *Roper v. Simmons*, 543 U.S. 551 (2005), Rippo argues that the prior conviction could not be used as an aggravating circumstance for death-penalty eligibility because he was only 16 years old at the time of the prior offense. We reject this argument because *Roper* only addresses whether a defendant can be sentenced to death for a capital offense committed before age 18; it does not address whether a conviction for an offense that was committed before the defendant was 18 can be used to make the defendant death-eligible on another offense committed after the defendant turned 18. Here, the murders were committed a week before Rippo's 27th birthday. The aggravating circumstances are valid, and Rippo has not demonstrated that he is ineligible for the death penalty.[35]

---

[35]Rippo argues that postconviction counsel was ineffective for not challenging the aggravating circumstances as invalid. We conclude that his claim lacks merit and therefore the district court did not err by denying this claim.

Having determined that Rippo is entitled to an evidentiary hearing as to the first claim in his petition but that his other claims lack merit, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

_____, J.
Hardesty

We Concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Parraguirre

PICKERING, J., concurring in part and dissenting in part:

I would remand not just for discovery and an evidentiary hearing but also briefing and argument on the mandate rule as it applies to Rippo's judicial bias claim. It may be, as my colleagues hold, that Rippo cannot prevail without establishing ineffective assistance of first post-conviction counsel. But that is not clear from the Supreme Court's opinion reversing our prior decision rejecting Rippo's judicial bias claim. *Rippo v. Baker*, 580 U.S. ___, 137 S. Ct. 905 (2017). Another, also supportable reading of the Supreme Court's *Rippo* opinion is that, because a judge's unconstitutional failure to recuse violates due process and constitutes structural error, *see Williams v. Pennsylvania*, 579 U.S. ___, ___, 136 S. Ct. 1899, 1909 (2016), and because our now vacated decision resolved Rippo's appeal partly based on law-of-the-case, *see Rippo v. State*, 132 Nev. 95, 117-18, 368 P.3d 729, 744 (2016), *vacated sub nom. Rippo v. Baker, supra*, Rippo may be entitled to a new trial if he can show the State defeated Rippo's original judicial bias claim by falsely denying its involvement in the investigation of the judge. *See Foster v. Chatman*, 578 U.S. ___, ___, 136 S. Ct. 1737, 1742-43 (2016) (reversing state supreme court order denying habeas corpus relief to a death-penalty defendant based on post-conviction evidence demonstrating the State defeated the defendant's original *Batson* challenge by misrepresenting the true bases for its peremptory challenges); *cf. also Wearry v. Cain*, 577 U.S. ___, ___, 136 S. Ct. 1002, 1008 (2016) (summarily reversing state court decision denying post-conviction relief and noting that, "[t]he alternative to granting review, after all, is forcing Wearry to endure yet more time on Louisiana's death row in service of a conviction that is constitutionally flawed"). We compound the problem by opining—in advance of discovery and an evidentiary hearing—on what trial and appeal

counsel knew or should have known, and when, about the facts underlying the judicial bias claim. *Cf. Echavarria v. Filson*, ___ F.3d. ___, ___ (9th Cir. 2018) (affirming district court's grant of federal habeas relief based on implied judicial bias claim) (discussing *Rippo*).

The mandate rule requires us to adhere to what the Supreme Court decided expressly or by necessary implication. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4478.3 (2d ed. 2002). Error by a subordinate court in interpreting the mandate may lead to further proceedings, including reversal. *See id.*, at 734-36 nn.4-5 (collecting cases). Because the proper interpretation of the Supreme Court's mandate in *Rippo* is not clear, I would not reissue our vacated opinion and limit the scope of the proceedings on remand to the district court, particularly not without input from the parties. If we are wrong in our interpretation of the mandate, additional delay and yet further proceedings, including additional discovery and even reversal, may result.

To avoid these risks, I would remand to the district court for discovery, an evidentiary hearing, and briefing and argument on Rippo's judicial bias claims, consistent with the Supreme Court's mandate in *Rippo*. I therefore concur in part and dissent in part.

_____, J.
Pickering

CHERRY, J., concurring in part and dissenting in part:

I concur in the majority's decision that when postconviction counsel is appointed pursuant to NRS 34.820, a challenge to that counsel's representation becomes available upon the conclusion of the first postconviction proceeding. I further agree with the majority's adoption of the two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984), to evaluate claims of ineffective assistance of postconviction counsel. However, I disagree with the majority's decision that a petition raising a claim of ineffective assistance of first postconviction counsel is filed within a reasonable time if it is filed within one year after entry of the district court's order disposing of the prior petition or, if a timely appeal is taken from the district court's order, within one year after our issuance of remittitur. I would hold that the reasonableness of any delay should be assessed on a case-by-case basis considering the totality of the circumstances, which may justify a delay of more than one year.

Turning to Rippo's claims, I agree with Justice Pickering as to the judicial-bias claim. But, unlike my colleagues, I also believe that Rippo showed that he is entitled to an evidentiary hearing on his claims that postconviction counsel was ineffective for not raising a claim of prosecutorial misconduct and an ineffective-assistance claim based on trial counsel's failure to present additional mitigation evidence. Therefore, I would reverse and remand this matter to the district court for an evidentiary hearing on these two claims as well.

Rippo complains that postconviction counsel was ineffective in failing to investigate and present evidence that the State knowingly presented perjured testimony at trial. Two of the State's witnesses, David Levine and James Ison, have provided declarations stating that the police

provided details about the murders that Rippo had not disclosed to them. The majority acknowledges that the statements in the declarations could have been used to impeach Levine and Ison but concludes that this was not enough to make a difference. In my view, an evidentiary hearing is necessary before that determination can be made. While Levine and Ison did not recant their testimony that Rippo admitted his involvement in the murders, their statements certainly impeached aspects of their testimony and, perhaps more importantly, raise serious concerns about prosecutorial misconduct. *See People v. Savvides*, 136 N.E.2d 853, 854 (N.Y. 1956) ("It is of no consequence that the falsehood bore upon the witness'[s] credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth."). The implications of the matters raised in the declarations deserve closer examination that an evidentiary hearing will provide.

Rippo also contends that postconviction counsel was ineffective for not challenging trial counsel's failure to present mitigating evidence of the abuse he suffered at the hands of his stepfather, James Anzini, and his neuropsychological impairment. The new evidence paints a picture of emotional and physical abuse to which the jury was not privy. Anzini played games with Rippo and his siblings for the sole purpose of belittling and harassing them. Anzini scared the children by pretending that he was going to drive the car they were riding in over a cliff. He hit Rippo and his siblings with books and bamboo sticks. Anzini treated Rippo worse than any of his children or stepchildren. On one occasion, after Rippo suffered a beating from a neighbor boy, Anzini ordered him to "go back and finish the job." Rippo returned to fight the boy and was

badly hurt. In another incident, Anzini flew into a rage when Rippo accidently broke an inexpensive household item. Anzini punished Rippo for minor infractions by confining him to his room for hours without access to a bathroom and then beating him when he wet his pants. While the family was living in Moab, Utah, Anzini punished Rippo by making him stand outside when the temperature was over 100 degrees. Rippo's mother, Carole Anzini, also contributed to his troubled childhood. She was neglectful in her care of him, and when he was seven years old, she took Rippo and his siblings from their home in New York without permission from the children's father, Domiano Campanelli. Campanelli knew nothing about his children's whereabouts until ten years later. The new mitigation evidence strongly suggests that Campanelli was a kind and caring father who loved his children very much. Because of Carole's actions, Rippo was robbed of a loving relationship with his father for a decade.

In addition, Rippo provided an evaluation from psychologist Jonathan Mack. Dr. Mack concluded that Rippo suffers from Attention Deficit Hyperactivity Disorder, which, along with his unstable upbringing, contributed to his early drug use. Further, Rippo sustained significant psychosocial trauma during his childhood, which caused "a chronic free floating anxiety which led to the development of his obsessive-compulsive and drug addictive tendencies" as a means of controlling his anxiety. Dr. Mack observed that Rippo's overall neurological and psychological assessment reveals that he has significant problems with attention, impulse control, and short-term memory that could have been identified by competent neurological testing prior to trial.

The mitigation evidence presented at trial did little in the way of providing the jury any insight into Rippo's character, background, and

SUPREME COURT
OF
NEVADA

(O) 1947A

conduct. Had the new mitigation evidence been presented, it could have provided that insight and swayed the jury to choose imprisonment rather than death. *See Penry v. Lynaugh*, 492 U.S. 302, 328 (1989) ("Rather than creating the risk of an unguided emotional response, full consideration of evidence that mitigates against the death penalty is essential if the jury is to give a reasoned *moral* response to the defendant's background, character, and crime." (citations and internal quotation marks omitted)), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002); *Douglas v. Woodford*, 316 F.3d 1079, 1090 (9th Cir. 2003) ("Evidence regarding social background and mental health is significant, as there is a 'belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional and mental problems, may be less culpable than defendants who have no such excuse.'" (quoting *Boyde v. California*, 494 U.S. 370, 382 (1990))); Jesse Chang, *Frontloading Mitigation: The "Legal" and the "Human" in Death Penalty Cases*, 35 Law & Soc. Inquiry 39, 46 (2010) ("The purpose of mitigating evidence is to provide the jury with a basis for sentencing the individual defendant to life imprisonment rather than to death . . . . The challenge facing defense counsel is to present mitigating evidence that explains the defendant's commission of the crime. This requires providing the jury with an empathy provoking way of understanding the defendant and his conduct."). While the majority casually dismisses this new mitigation evidence, concluding that it would not have made a difference, Rippo has produced sufficient support entitling him to an evidentiary hearing to prove his allegations that postconviction counsel provided ineffective assistance by failing to investigate and challenge trial counsel's performance in the presentation of mitigating circumstances. Should he

be successful, he may secure a new penalty hearing. Justice demands that he receive that opportunity.

_____, J.
Cherry

